Manuel VILLANUEVA, Jr., Appellant,

v.

OFFICE OF THE ATTORNEY
GENERAL OF TEXAS,
Appellee.

No. 04–96–00009–CV.

Court of Appeals of Texas,
San Antonio.

Dec. 11, 1996.

Rehearing Overruled Jan. 7, 1997.

Rodolfo R. Munoz, San Antonio, for appellant.

Vann Pressley, Rhonda Amkraut Pressley, Assistant Attorney General, Child Support Enforcement Division, Austin, for appellee.

Before CHAPA, C.J., STONE and GREEN, JJ.

## OPINION

GREEN, Justice.

Manuel Villanueva appeals from a Bexar County trial court's enforcement of an Indiana child support order and arrearage judgment. Villanueva asserts four points of error, alleging that the Indiana order was unenforceable and that paternity was at issue.

## FACTS

On March 23, 1982, the circuit court in Howard County, Indiana entered a divorce decree ordering Villanueva to pay child support in the amount of $300.00 per month "through a military allotment." On October, 14, 1983, the same court found Villanueva $1,800.00 in arrears, reduced that amount to judgment, and ordered Villanueva to comply with the 1982 decree.

To enforce these Indiana orders, on March 14, 1995, the Texas Attorney General filed a Notice of Registration of Foreign Support Order and a Motion for Enforcement pursuant to the Uniform Interstate Family Support Act (UIFSA). Villanueva filed an answer on May 9, 1995 contesting the "validity and/or enforcement" of the orders. After a hearing on the Attorney General's motion, the court confirmed the registration of the Indiana orders and ordered Villanueva to pay $12,290 in arrears.

On appeal, Villanueva asserts that the trial court erred in enforcing the Indiana orders because the orders were "too ambiguous, indefinite and uncertain." He further attacks the trial court's confirmation of the Indiana orders and claims that the trial court erred in failing to order paternity testing prior to ordering an arrearage judgment.

## DISCUSSION

Through his first two points of error, Villanueva submits that the original Indiana decree, dated March 23, 1982, is too ambiguous for a court to enforce. Villanueva contends that because he is not currently in the military, he cannot comply with the 1982 decree's terms which directed him to pay child support "through a military allotment." Because of this alleged ambiguity, he claims the order is unenforceable by contempt and thus unenforceable by any means. At oral argument, however, Villanueva conceded that the order itself was valid, just not enforceable.

Under the Full Faith and Credit Clause of the United States Constitution, the introduction of a facially valid foreign order creates a *prima facie* case for its recognition and enforcement. *Mitchim v. Mitchim,* 518

S.W.2d 362, 364 (Tex.1975); *Cowan v. Moreno,* 903 S.W.2d 119, 123 (Tex.App.—Austin 1995, no writ); *Nuñez v. Nuñez,* 771 S.W.2d 7, 9 (Tex.App.—San Antonio 1989, no writ). Such an order can be attacked only on limited grounds, and the burden of proof is on the party challenging the order. *Mitchim,* 518 S.W.2d at 364; *Cowan,* 903 S.W.2d at 123; *Nuñez,* 771 S.W.2d at 9. The Texas Family Code, which incorporates the UIFSA,[1] allows a party to contest the validity or enforcement of a registered order on seven different grounds. *See* Tex. Fam.Code Ann. § 21.41(a) (current version at § 159.607(a)). These grounds include:

(1) the issuing tribunal lacked personal jurisdiction over the contesting party;

(2) the order was obtained by fraud;

(3) the order has been vacated, suspended, or modified by a later order;

(4) the issuing tribunal has stayed the order pending appeal;

(5) there is a defense under the law of this state to the remedy sought;

(6) full or partial payment has been made; or

(7) the statute of limitation ... precludes enforcement of some or all of the arrearages.

*Id.*

Here, Villanueva has not proved any of the defenses set out in the Family Code. He attempts to establish a defense using Texas law, citing *Rovner v. Rovner,* 778 S.W.2d 905 (Tex.App.—Dallas 1989, writ denied); *Templet v. Templet,* 728 S.W.2d 844 (Tex.App.—Beaumont 1987, no writ); and *Richey v. Bolerjack,* 594 S.W.2d 795 (Tex.Civ.App.—Tyler 1980, no writ) for the proposition that an order which is unenforceable by contempt will not support an arrearage judgment. However, these cases are inapplicable to the present case since all of them, except *Rovner,* were decided prior to the effective date

of the sections 14.33(d) and 14.311(b) of the Texas Family Code. *See* August 2, 1989, 71st Leg., 1st C.S., ch. 25 § 18, 1989 Tex. Gen. Laws 82 (formerly Tex. Fam.Code Ann. § 14.311(b)) (current version at Tex. Fam. Code Ann. § 157.162(a)); Act of August 4, 1987, 70th Leg., 2d C.S., ch. 73 § 7, 1987 Tex. Gen. Laws 229 (formerly Tex. Fam.Code Ann. § 14.33(d)) (current version at Tex. Fam.Code Ann. § 157.162(b)). *Rovner* likewise does not apply since it did not discuss these statutory provisions but instead applied previous case law antedating sections 14.33(d) and 14.311(b). Section 14.311(b) of the Family Code, which became effective on November 1, 1989, provides that a party seeking enforcement of a child support order "is not required to plead or prove that the underlying order is enforceable by contempt to obtain appropriate enforcement remedies." Section 14.33(d), effective on November 1, 1987, states that "[a] finding that an obligor is not in contempt does not preclude any other enforcement remedy properly pled for, including rendition of a money judgment, posting of a bond or other security, or withholding from earnings."

Case law subsequent to the enactment of these provisions indicates that an arrearage judgment can be awarded even if the underlying order is unenforceable by contempt so long as the order is "sufficiently definite and certain." *See Gross v. Gross,* 808 S.W.2d 215, 218–19 (Tex.App.—Houston [14th Dist.] 1991, no writ); *Ex Parte Tamez,* 801 S.W.2d 18, 19 (Tex.App.—Corpus Christi 1990, orig. proceeding). In *Gross,* the appellant argued that a judgment that was too ambiguous and indefinite for enforcement by contempt was also too ambiguous to be enforced by a money judgment. *Gross,* 808 S.W.2d at 218. The court found that the "Family Code now provides otherwise." *Id.* After citing sections 14.33(d) and 14.311(b), the court held

---

1. The Texas Legislature recodified the UIFSA, effective April 20, 1995. *See* Act of April 20, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 195–208 (current version at Tex. Fam.Code Ann. §§ 159.001–.902 (Vernon 1996)). The change in the law made by this Act only affects proceedings instituted after the effective date; proceedings pending on the effective date are governed by the previous law. *Id.* at ch. 20, § 3,

1995 Tex. Gen. Laws 282. Thus, we analyze the issues involved in this case under the previous codification of UIFSA and will refer to that version which was in effect at the time the present case was pending. *See* Act of June 19, 1993, 73rd Leg., R.S., ch. 970, § 1, 1993 Tex. Gen. Laws 4212–35 (previously codified at Tex. Fam. Code Ann. §§ 21.01, *et. seq* ).

that a child support order may be enforced by a money judgment even if it is too ambiguous to be enforced by contempt so long as the order is "sufficiently definite and certain." *Id.* at 219. Although Villanueva is correct in noting that the *Gross* Court did say that a judge may refuse to enter a judgment for back child support based upon an order that is unenforceable by contempt, it is important to note that the court only said that a trial judge *may* refuse to enter such a judgment but not that he is prohibited from entering an arrearage judgment. *See id.* at 218.

Villanueva did not assert any other defenses to enforcement listed in section 21.41(a). Because Villanueva did not meet his burden in showing why the facially valid Indiana order should not be enforced, the trial court properly recognized and enforced the Indiana child support judgments. Villanueva's first and second points of error are overruled.

■ In his third point of error, Villanueva contends that the trial court erred in confirming the registration of the Indiana order by operation of law. In his brief, Villanueva appears to be arguing that the Attorney General "enticed error" by convincing the trial court that Villanueva was precluded from asserting any objections or defenses to the enforcement of the Indiana order once the order was registered. However, nothing in the record indicates that the trial court confirmed the registration of the Indiana order by operation of law or that the court ignored the defenses that Villanueva asserted in his pleadings. The trial court's order simply states that "[t]he Court finds that the Registration of the foreign support order and its attached documents filed March 14, 1995, is confirmed," and the findings of fact and conclusions of law merely reiterate that the registration of the decree "was proper and is confirmed." Because Villanueva did not file any statement of facts, we are to presume that the evidence supported the trial court's judgment. *See Valenzuela v. St. Paul Ins.*

*Co.,* 878 S.W.2d 667, 670 (Tex.App.—San Antonio 1994, no writ)(citing *Englander Co., Inc. v. Kennedy,* 428 S.W.2d 806 (Tex.1968)); *Box v. Flynn,* 870 S.W.2d 585, 592–93 (Tex. App.—San Antonio 1993, no writ). Villanueva's third point of error is overruled.

Through his fourth point of error, Villanueva asserts that the trial court erred in failing to order "blood tests and/or discovery" concerning his paternity prior to enforcing the child support order.

■ As discussed under points of error one and two, Villanueva's only defenses to the enforcement of the facially valid Indiana order are those listed in section 21.41(a) of the Family Code; non-paternity is not listed. Nonparentage is not a defense if the party's parentage has been previously determined. TEX. FAM.CODE ANN. § 21.27 (currently at § 159.315). Moreover, a state must give another's state judgment the *res judicata* effect it would receive in the rendering state. *Durfee v. Duke,* 375 U.S. 106, 109, 84 S.Ct. 242, 244, 11 L.Ed.2d 186 (1963); *Maxfield v. Terry,* 885 S.W.2d 216, 218 (Tex.App.—Dallas 1994, writ denied). A state must give another state's judgment full faith and credit when the parties fully and fairly litigated the issue in the other state. *See Durfee,* 375 U.S. at 111, 84 S.Ct. at 245; *Maxfield,* 885 S.W.2d at 218–19.

■ Under Indiana law, orders in which the court refers to the child at issue as the "child of the marriage" constitutes a finding of parentage and is binding on the parties, barring further litigation on the issue of paternity. *Gipson v. Gipson,* 629 N.E.2d 952, 954 (Ind.Ct.App.), *aff'd,* 644 N.E.2d 876 (Ind. 1994); *cf. In re S.R.I.,* 602 N.E.2d 1014, 1015–16 (Ind.1992). In the case at bar, the order referred to the child in issue as the "minor child of the parties"; such wording is substantially similar to that in *Gipson,* warranting the application of *Gipson* to the present facts. Because Villanueva was indisputably a party to the present action, the language in the Indiana order constitutes a finding of Villanueva's parentage. The determination of Villanueva's paternity and its

*res judicata* effect must be given full faith and credit by Texas courts. *See* TEX. FAM. CODE ANN. § 21.27; *Durfee,* 375 U.S. at 111, 84 S.Ct. at 245. We conclude that the trial court did not err when it did not delve into the issue of Villanueva's alleged nonpaternity; Villanueva's fourth point of error is overruled.

The judgment of the trial court is affirmed.